UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00271-GNS

AZAREIA KANTREYALE HINTON                                              PLAINTIFF

v.

AMERICAN AIRLINES, INC.; and
U.S. AIRWAYS, INC.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motion to Dismiss by Defendant American Airlines, Inc. (DN 7); Letter to the Court from Counsel for American Airlines, Inc. (DN 13); and Defendant American Airlines, Inc.'s Motion to Redact (DN 17). The motions are ripe for adjudication.

### I.  BACKGROUND

On April 17, 2023, Plaintiff Azareia Kantreyale Hinton ("Hinton") was passenger waiting to board American Airlines Flight 1444 at Louisville Muhammed Ali International Airport. (Notice Removal Ex. A, at 6, DN 1-2). After it was announced that military personnel could board the plane, Hinton proceed to the gate. (Notice Removal Ex. A, at 6). Hinton alleges that the gate agent told her to step aside because she did not have an assigned seat for the flight. (Notice Removal Ex. A, at 6). As Hinton waited for a seat assignment, she claims that a gate agent commented that Hinton could not sit in an unspecified seat because she did not speak English. (Notice Removal Ex. A, at 6). Hinton clarified that English is her first language, and the agent assigned her seat 10E. (Notice Removal Ex. A, at 6).

When Hinton returned to the boarding line, she claims that an agent yelled at her for trying to board early, and Hinton again showed the agent her military ID. (Notice Removal Ex. A, at 6). After the agent scanned the boarding pass, Hinton stated "'wow you lied and I cant [sic] speak English to prevent me from getting a certain seat on the plane'. [The agent's] reply was-'O well, I didn't know.[]'" (Notice Removal Ex. A, at 6-7).

After being seated on the plane, Hinton allegedly began recording as another employee of Defendant American Airlines, Inc. ("American") approached her. (Notice Removal Ex. A, at 7). The employee told Hinton that she was in the wrong seat and requested to see Hinton's boarding pass. (Notice Removal Ex. A, at 7). Hinton asserts that she asked the person "'Mam, Why did you tell her (the other agent #1) I cant [sic] speak english?[']  [sic]  [The agent] admitted on recorded camera 'because when I asked you about your boarding pass, you acted like you didn't understand what I was talking about' which [Hinton believes] [was] not true." (Notice Removal Ex. A, at 7).

Hinton filed this action against, *inter alia*, American.[1]  Hinton has asserted claims for harassment, and racial and religious discrimination.[2]  (Notice Removal Ex. A, at 7).

American removed the matter to this Court. (Notice Removal 1, DN 1). American has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and moved to redact a document filed by Hinton as part of her response to the dispositive motion. (Def.'s Mot. Dismiss, DN 7; Def.'s Mot. Redact, DN 17). Defense counsel has also filed a letter relating to Hinton's response. (Letter, DN 13).

---

[1] The other named Defendant is U.S. Airways, Inc., which was acquired by merger with American in 2013. *See* American Airlines, Inc., *AMR Corporations and US Airways Group Come Together to Build the New American Airlines* (Dec. 9, 2013, 12:00 AM), https://news.aa.com/news/news-details/2013/AMR-Corporation-And-US-Airways-Group-Come-Together-To-Build-The-New-American-Airlines/default.aspx (last visited Dec. 6, 2023).
[2] The Complaint is styled as a "Official Demand Letter." (Notice Removal Ex. A, at 6).

## II. DISCUSSION

### A. Defendant's Motion to Dismiss (DN 7)

A motion to dismiss asks a court to determine whether the allegations in a complaint are sufficient for a case to proceed any further or whether a court should dismiss the case at an early stage due to insufficient allegations. At this stage, the Court is not considering any evidence; rather, the Court is tasked with determining only whether Hinton's allegations are legally sufficient for the case to proceed any further.

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a motion to dismiss, a court must "accept all the Plaintiff's factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451-52 (6th Cir. 2003)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

#### 1. *Applicable Rules*

This case was initially filed in Jefferson Circuit Court (Kentucky), and the pleadings filed in that court are subject to the Kentucky Rules of Civil Procedure. Pursuant to 28 U.S.C. §§

1441 and 1446, American exercised its right to remove this matter to federal court based on diversity of citizenship jurisdiction under 28 U.S.C § 1332. (Notice Removal 1, DN 1).

Generally speaking, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings . . . ." *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 659 (W.D. Ky. 2019) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974)). In particular, Fed. R. Civ. P. 81 provides that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 134-35 (1992) ("[The] expansive language [of Rule 81] contains no express exceptions and indicates a clear intent to have the Rules, including Rule 11, apply to all district court civil proceedings." (footnote omitted)). Thus, the Court will apply the more stringent federal rules in evaluating the allegations in the Complaint and in considering American's motion.

### 2.     *Documents Filed by Hinton*

In ruling on a motion to dismiss, the Court, "may look outside the four corners of the complaint and consider materials attached to a motion to dismiss if they are referred to in the complaint and central to the claim." *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 637 (6th Cir. 2016) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Hinton has filed numerous documents in the Court record, which she apparently considers to be evidence in support for her claims. (Pl.'s Resp. Show Cause Order, DN 12; Pl.' Resp. Def.'s Mot. Dismiss, DN 15). As noted above, the Court cannot consider any evidence at this stage, and based on the specific allegations in the Complaint, the Court's ruling must be constrained to the allegations in the Complaint itself because the documents provided by Hinton almost entirely relate to her

communications with American following the incident rather than the factual allegations in support of her causes of action.

### 3. *Merits of the Motion*

In its motion, American seeks dismissal of all of Hinton's claims. (Def.'s Mem. Supp. Mot. Dismiss 9, DN 7). In considering the motion, the Court must consider Hinton's status as a *pro se* litigant. "[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Conclusory allegations, however, are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55); *see also Followell v. Mills*, 317 F. App'x 501, 505 (6th Cir. 2009) (indicating that conclusory allegations or bare legal conclusions will not suffice as factual allegations).

#### a. Harassment

The Complaint purports to assert a claim for harassment, which the Court will construe as arising under Kentucky law.[3] American contends that Hinton has failed to state a claim for harassment under KRS 525.070(1)(e). While this is a criminal statute, KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070.

---

[3] "It has long been established that [] a federal court sitting in diversity applies state substantive law . . . ." *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-CV-00155, 2013 WL 98059, at *1 (W.D. Ky. Jan. 7, 2013) (citing *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)).

In relevant part, KRS 525.070 provides that "[a] person is guilty of harassment when, with intent to intimidate, harass, annoy or alarm another person, he or she . . . [e]ngages in a course of conduct or repeatedly commits act which alarm and seriously annoy such other person and which serve no legitimate purpose . . . ." KRS 525.070(1)(e). As a sister court has noted:

> Harassment under KRS § 525.070 "requires proof of the additional fact of intent to harass, annoy or alarm another person." *Hart v. Commonwealth*, 768 S.W.2d 552, 554 (Ky. App. 1989). Additionally, KRS § 525.070(1)(e) requires that the defendant's conduct actually results in another person being alarmed or seriously annoyed. Therefore, a plain reading of the statute indicates that simple expressions of dislike, discomfort, uneasiness, or displeasure are insufficient to state a claim.

*Montell v. Diversified Clinical Servs. Inc.*, 969 F. Supp. 2d 798, 807 (E.D. Ky. 2013) (citation omitted), *aff'd in part and rev'd in part*, 757 F.3d 497 (6th Cir. 2014).

Taking all allegations as true, the Complaint does not state a statutory claim for harassment. Hinton does not allege that the American employees acted with intent to harass her. The only allegation of intent relates to her assertion of discrimination based on race and religion. (Notice Removal Ex. A, at 7 ("She intentionally discriminated against me based on my appearance because I'm African American and I wear a hijab scarf to cover my hair due to my religion.")).

Hinton has also not plausibly alleged that the actions of the American staff served no legitimate purpose. While Hinton perceived the questions as inappropriate, it is not improper for staff to make sure that airline passengers are properly ticketed, have assigned seats, are sitting in those seats, and are boarding in the proper group. In addition, American staff had a duty to make sure that Hinton spoke English if she were sitting in an exit row in the event that crew members had to give emergency instructions in English. With respect to passengers seated in exit rows, federal law provides:

> No certificate holder may seat a person in a seat affected by this section if the certificate holder determines that it is likely that the person would be unable to perform one or more of the applicable functions listed in paragraph (d) of this section because—
>
> . . .
>
> (3)  The person lacks the ability to read and understand instructions required by this section and related to emergency evacuation provided by the certificate holder in printed or graphic form or the ability to understand oral crew commands.

14 C.F.R. § 121.585(b)(3). Thus, while Hinton may have taken offense to the questioning or the questions could have been presented in a more tactful manner, there was a legitimate purpose to determine whether Hinton spoke English if she were to be seated in an exit row.

For these reasons, Hinton has failed to state a claim for harassment based on KRS 525.070(1)(e). This claim is dismissed.

### b.  Racial and Religious Discrimination

Hinton also mentions claims of discrimination based on her race and religion. The Court construes those claims as being asserted under the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344.

In relevant part, the KCRA provides:

> [I]t is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in KRS 344.130, on the ground of disability, race, color, religion, or national origin.

KRS 344.120. The KCRA defines the term "placement of public accommodation" to include "any place, store, or other establishment, either licensed or unlicensed, which supplies goods or services to the general public . . . ." KRS 344.130.

The allegations in the Complaint do not articulate a discrimination claim based on direct evidence and instead will be construed as being based on indirect evidence. Because of the

7

similarities between KRS 344.120 and 42 U.S.C. § 1981, "this Court has previously applied the burden-shifting framework used for claims of discrimination under 42 U.S.C. § 1981." *Cary v. Cordish Co.*, No. 3:14-CV-458-DJH-CHL, 2016 WL 1178799, at *2 (W.D. Ky. Mar. 23, 2016) (citing *Miller v. Freedom Waffles, Inc.*, No. 3:06CV-159-H, 2007 WL 628123, at *5 (W.D. Ky. Feb. 23, 2007)). To state a prima facie claim of discrimination under KRS 344.120 based on circumstantial evidence, Hinton must allege:

(1) [she] is a member of a protected class;
(2) [she] sought to make or enforce a contract for services ordinarily provided by the defendant; and
(3) [she] was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that
 (a) [she] was deprived of services while similarly situated persons outside the protected class were not[;] and/or
 (b) [she] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id*. (fifth alteration in original) (quoting *Miller*, 2007 WL 628123, at *3).

Hinton alleges in the Complaint that she is an African American woman who was wearing a hijab scarf at the time of the alleged discrimination. (Notice Removal Ex. A, at 7). Those facts are sufficient to allege that Hinton was a member of two protected classes based on her race and religion, as required for the first element. Hinton's allegations are also sufficient for the second element. She has alleged that she was a ticketed passenger on a flight operated by American and attempted to board that flight.

The final element of her prima facie claim is problematic one. Hinton does not allege that she was not allowed to take the flight, so she has not alleged any deprivation of services by American. Instead, the Court must determine whether Hinton has alleged that she "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Cary*, 2016 WL 1178799, at *2 (quoting *Miller*, 2007 WL 628123,

8

at *3). In making that determination, courts consider whether the defendant's alleged conduct was: "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)).

To satisfy this element for a racial discrimination claim, courts have held that a plaintiff must allege "serious examples of racially charged conduct—usually including racial epithets . . . ." *Miller*, 2007 WL 628123, at *4. Other than mentioning the assertion of a claim of racial discrimination, the Complaint is otherwise silent of any such factual allegations to support such a claim. Therefore, even liberally construing the Complaint, Hinton has failed to assert a claim of racial discrimination under KRS 344.120.

The Complaint does contain more particular allegations related to Hinton's religious discrimination claim. As discussed above regarding the harassment claim, however, Hinton's allegations are insufficient to survive dismissal of her religious discrimination claim. The questions allegedly posed by the gate agents related to the legitimate business interests of American in providing transportation services and were not outside widely accepted business norms. Those questions were also not arbitrary because they were related to Hinton being a passenger on the flight. None of the questions, however, were religiously charged. Accordingly, when Hinton's allegations are considered in the proper light, Hinton has failed to state a religious discrimination claim under KRS 344.120.

For these reasons, American's motion is granted.[4] In light of Hinton's *pro se* status, the Court will grant her 30 days from the entry of this Memorandum Opinion and Order to file an Amended Complaint that complies with the Federal Rules of Civil Procedure. If Hinton fails to file an amended pleading, the Court will dismiss this case.

### B. Defense Counsel's Letter (DN 13)

On October 18, 2023, American's counsel filed a letter in the docket noting that lack of a response to the show cause order and requesting dismissal of Hinton's claims. (Letter 1, DN 13). Fed. R. Civ. P. 7(b) provides that a request for a court order must be made by way of motion and notes that the rules (including Fed. R. Civ. P. 10) governing captions and other matters of form in pleadings apply to such motions. In addition, LR 5.2 addresses the format of pleadings. Because this filing is unauthorized, it is stricken.

### C. Motion to Redact (DN 17)

Finally, American has moved to redact pages 10 and 11 of a document filed by Hinton (DN 16). (Def.'s Mot. Redact 1, DN17). American asserts that those two pages "contain employee names, addresses, contact information, and claim numbers specific to American" but cites no legal authority in support of its motion. (Def.'s Mot. Redact 1).

A ruling on such a request "is bounded by a 'long-established legal tradition' of the 'presumptive right of the public to inspect and copy judicial documents and files.'" *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983)). As the Sixth Circuit has noted:

---

[4] While American argues that it cannot be liable under the doctrine of respondeat superior, it is unnecessary to address that argument because Hinton has failed to state a claim for any wrong committed by an employee of American. (Def.'s Mem. Supp. Mot. Dismiss 19). Likewise, it is unnecessary to address the potential remedies for any such claims. (Def.'s Mem. Supp. Mot. Dismiss 14-15, 20-21).

> We have long recognized a "strong presumption in favor of openness" regarding court records. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). In civil cases, as much as in criminal matters, "[t]he resolution of private disputes frequently involves issues and remedies affecting third parties or the general public," and secrecy serves only to "insulate[] the participants, mask[] impropriety, obscur[e] incompetence, and conceal[] corruption."

*Id.* at 593 (alterations in original) (quoting *Brown*, 710 F.2d at 1179).

The Sixth Circuit has recognized two categories of limited common law exceptions to the right of access: "those based on the need to keep order and dignity in the courtroom and those which center on the content of the information to be disclosed to the public." *Brown*, 710 F.2d at 1179. American's request is more appropriately characterized as seeking relief under the second exception. "Under the common law, content-based exceptions to the right of access have been developed to protect competing interests. In addition to the defendant's right to a fair trial, these interests include certain privacy rights of participants or third parties, trade secrets and national security." *Id*. (citations omitted).

In this instance, it is appropriate to redact the contact information for the named employee of American. American has cited no authority for otherwise redacting that employee's name or the claim number to assigned to Hinton's claim. This motion is granted in part and denied in part.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss (DN 7) is **GRANTED**. Within 30 days of the entry of this Memorandum Opinion and Order, Plaintiff may file an Amended Complaint set forth any further factual allegations in support of any claims against Defendant. If Plaintiff fails to make that filing, the Court will dismiss this action.

2.  Letter to the Court from Counsel for American Airlines, Inc. (DN 13) is **STRICKEN** as an unauthorized filing.

3.  Defendant's Motion to Redact (DN 17) is **GRANTED IN PART** and **DENIED IN PART**, and the contact information for the American Airlines employee shall be redacted from pages 10 and 11 in DN 16.

Greg N. Stivers, Chief Judge
United States District Court

January 8, 2024

cc: counsel of record
Azareia Kantreyale Hinton, 3317 Oleanda Ave., Louisville, KY  40215